239 N.W.2d 803 (1976)
Ernest KITTELSON, Petitioner,
v.
Joseph H. HAVENER, Warden of the State Penitentiary, and Edward J. Klecker, Director of Institutions, Respondents.
Cr. No. 549.
Supreme Court of North Dakota.
February 11, 1976.
*804 Benjamin C. Pulkrabek, Public Defender, Bismarck, for petitioner.
Donald R. Holloway, Special Asst. Atty. Gen., Bismarck, Richard L. Schnell, Morton County State's Atty., Mandan, John E. Adams, Asst. Atty. Gen., Bismarck (appearance by Marvin M. Hager, Asst. State's Atty.), for respondents.
*805 SAND, Judge.
Kittelson, the petitioner, through his attorney, invoking the original jurisdiction of this Court in a habeas corpus proceeding, seeks to be discharged from confinement.
Kittelson claims he was illegally sentenced to the State Penitentiary because § 12-38-04, NDCC, under and pursuant to which he was charged on May 12, 1975, and sentenced on November 5, 1975, had been effectively repealed without an express savings clause as to the incarceration penalty by the enactment of Title 12.1, chapter 116 of the 1973 Session Laws, which became effective July 1, 1975.
Kittelson, on May 3, 1975, and again on May 4, 1975, drew checks on First Northwestern Bank in Mandan in the amount of $20.00 each, payable to Lewis and Clark Hotel, for which he received $20.00 from the Lewis and Clark Hotel in each instance. At the time, he had no money in the bank. The State's Attorney, on May 12, 1975, issued a complaint charging petitioner with two counts of obtaining property by false pretenses in violation of § 12-38-04, NDCC. On October 31, 1975, Kittelson appeared before the district judge and plead guilty to the charges, and on November 5, 1975, he was sentenced to a year in the State Penitentiary, where he is presently incarcerated. On December 12, 1975, he unsuccessfully sought release through a writ of habeas corpus proceedings before Judge Benny Graff.
This Court in McGuire v. Warden of State Farm, 229 N.W.2d 211 (N.D.1975), said that the Uniform Post-Conviction Procedure Act, chapter 29-32, NDCC, was intended to replace habeas corpus statutes so far as persons arrested for, or convicted of, violation of criminal law are concerned. We concluded that "because of the provisions of the Uniform Post-Conviction Procedure Act and in the interest of orderly management of the case flow of the courts, petitions for relief in the nature of habeas corpus should normally be directed to the court in the district of conviction, under the Uniform Post-Conviction Procedure Act." But we also concluded that because the parties briefed and argued the case on its merits and because the matters raised were of substantial importance which had not been settled, we decided to resolve the substantive questions presented.
This Court, in Charles Edward Smith v. State of North Dakota, 236 N.W.2d 632 (N.D.1975), reaffirmed the McGuire decision by saying that the appropriate procedure to obtain review of conviction other than by appeal is under the Uniform Post-Conviction Procedure Act, chapter 29-32, NDCC, and not by habeas corpus. We affirm and adhere to those decisions, but because of the unique question raised which needs to be resolved by this Court, either at this proceeding or at a subsequent proceeding, we deem it advisable to resolve it now.
The petitioner contends that pursuant to the specific provisions of § 1-02-17, NDCC, he is entitled to be released and discharged from any further confinement. This section provides as follows:
"The repeal of any statute by the legislative assembly, or by the people through an initiated law, shall not have the effect of releasing or extinguishing any penalty, fine, liability, or forfeiture incurred under such statute, but as to cases tried before, or subsequent to, the repeal of such statute, it shall have the effect of extinguishing any jail or prison sentence that may be, or that has been, imposed by reason of said law, unless the repealing act shall provide expressly that the penalties of imprisonment shall remain in force as to crimes committed in violation of such law prior to its repeal. In other respects, such act shall remain in force only for the purpose of the enforcement of such fine, penalty, or forfeiture." [Underscoring ours.]
Section 1-02-17, NDCC, is a statutory provision, and even though it is couched in strong and emphatic language, it cannot be transmuted into a constitutional provision so as to impose specific conditions or *806 limitations upon the State Legislature on matters pertaining to legislative powers and methods of procedure. Consequently, such statutory provision is subject to amendment, modification, revision, alteration, or repeal by the ordinary legislative process, including enactment of other Acts on the same subject.
This Court had under consideration provisions of the above mentioned section in Ex parte Chambers, 69 N.D. 309, 285 N.W. 862 (1939), and held that the provisions which attempted to extinguish the incarceration sentences of persons convicted and sentenced prior to the effective date of the Act was in conflict with § 76 of the North Dakota Constitution and to that extent was invalid. However, in this instance we are not involved with a sentence imposed prior to the effective date of the Act.
On careful examination, it becomes quite apparent that § 1-02-17, NDCC, addresses itself to situations where there is an outright repeal without a replacement. We express serious reservations whether or not the provisions of this section apply to instances where a statute was repealed and replaced by another Act even though the substituted Act differed somewhat from the repealed statute.
The petitioner argues strenuously that, pursuant to the provisions of § 1-02-17, NDCC, the repeal of § 12-38-04, without a specific saving clause as to the penalty thereunder, any jail or prison penalties provided for under said section became extinguished on July 1, 1975, the effective date of Title 12.1, chapter 116 of the 1973 Session Laws.
Let us now examine some of the pertinent provisions of Title 12.1, chapter 116, 1973 Session Laws.
Section 42 of chapter 116, 1973 Session Laws, provides that the Act shall become effective on July 1, 1975. Section 41 of the same chapter contains the repeal provision. Section 1, by which § 12.1-01-01 was created, provides as follows:
"1. Title 12.1 of the Century Code may be cited as the North Dakota Criminal Code.
"2. This title, except as provided in subsection 3 of this section, shall not apply to offenses committed prior to its effective date. Prosecutions for such offenses shall be governed by prior law, which is continued in effect for that purpose. For the purposes of this section, an offense was committed prior to the effective date of this title if any of the elements of the offense occurred prior thereto.
"3. In cases pending on or after the effective date of this title, and involving offenses committed prior thereto:
"a. The provisions of this title according a defense or mitigation shall apply, with the consent of the defendant; and
"b. The court, with the consent of the defendant, may impose sentence under the provisions of this title which are applicable to the offense and the offender.
"4. This section does not affect the power of a court or legislature to punish for contempt, or to employ any enforcement sanction authorized by law, nor does this section affect any power conferred by law upon military authority to impose punishment upon offenders."
The term "Title" refers to 12.1, NDCC, and embraces all of chapter 116 of the 1973 Session Laws, including § 42, stating the effective date, and § 41, containing the repealing clauses. The language "This title . . . shall not apply to [an] offense[s] committed prior to its effective date," has full application to its repeal provisions which, as applied to the present situation, means that § 12-38-04 has not been repealed. This language, coupled with the language that "prosecutions for such offenses shall be governed by prior law which is continued in effect for that purpose" constitutes a saving clause, as referred to in § 1-02-17, NDCC, and in effect provides that the penalties and incarceration provisions *807 under the prior law, § 12-38-04, NDCC, remain in full force as to crimes committed prior to the repeal. The combined effect and result of this language is that as to crimes committed prior to July 1, 1975, the section of law under which the individual is charged is not considered repealed and remains in full force and effect until all of the matter thereunder has been completed, except with specific consent of the defendant the later Act may be applied.
The petitioner specifically argues that the term "prosecution" as used in the aforementioned statutory provision consists of the mere process of prosecuting, including the determination of guilt but does not encompass the imposition of punishment or incarceration. We cannot agree with this. The word "prosecution" has different meanings when used in different relations. It, like any other word, takes on its full meaning from the context in which it is found. See 73 C.J.S. Prosecution, page 221 and 22 C.J.S. Criminal Law § 1, page 8.
The United States Supreme Court, in Bradley v. United States, 410 U.S. 605, 93 S.Ct. 1151, 35 L.Ed.2d 528 (1973), had under consideration a similar question. The Court observed that the petitioners contend that the word "prosecution" must be given its everyday meaning and that when people speak of prosecutions they usually mean a proceeding that is under way in which guilt is to be determined. The Court also observed that in ordinary usage, sentencing is not part of the prosecution but occurs after the prosecution has concluded. The petitioners contend that "In providing that `prosecutions . . . shall not be affected,' § 1103(a) means only that a defendant may be found guilty of an offense which occurred before May 1, 1971. The repeal of the statute creating the offense does not, on this narrow interpretation of § 1103(a), prevent a finding of guilt. But § 1103(a) does nothing more . . .."
After noting the petitioners' contention the Court said that it had some force but that it did not believe that the position of the petitioners was consistent with Congress' intent. The United States Supreme Court stated, 410 U.S. at 609, 93 S.Ct. at 1154, at 35 L.Ed.2d 533:
"Rather than using terms in their everyday sense, [t]he law uses familiar legal expressions in their familiar legal sense.' Henry v. United States, 251 U.S. 393, 395, 40 S.Ct. 185, 186, 64 L.Ed. 322 (1920). The term `prosecution' clearly imports a beginning and an end. Cf. Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967).
"In Berman v. United States, 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937), this Court said, `Final judgment in a criminal case means sentence. The sentence is the judgment. Miller v. Aderhold, 288 U.S. 206, 210 [53 S.Ct. 325, 77 L.Ed. 702]; Hill v. U. S. ex rel. Wampler, 298 U.S. 460, 464 [56 S.Ct. 760, 80 L.Ed. 1283].' Id., at 212, 58 S.Ct. at 166, 82 L.Ed. 204. In the legal sense, a prosecution terminates only when sentence is imposed. See also Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497 (1943); United States v. Murray, 275 U.S. 347, 48 S.Ct. 146, 72 L.Ed. 309 (1928); Affronti v. United States, 350 U.S. 79, 76 S.Ct. 171, 100 L.Ed. 62 (1955). So long as sentence has not been imposed, then, § 1103(a) is to leave the prosecution unaffected.
"We therefore conclude that the Court of Appeals properly rejected petitioners' motion to vacate sentence and remand for resentencing. The District Judge had no power to consider suspending petitioners' sentences or placing them on probation. Those decisions must ordinarily be made before the prosecution terminates, and § 1103(a) preserves the limitations of § 7237(d) on decisions made at that time."
See also, Warden, Lewisburg Penitentiary v. Marrero, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974), wherein the Court said a similar saving clause also applied to parole eligibility.
*808 The rationale of the United States Supreme Court fully applies to the instant situation. The term "prosecution" as used in § 12.1-01-01, NDCC, out of necessity refers to the entire proceedings, including the sentencing.
Section 1-02-17, NDCC, does not have the force and effect of a constitutional provision. Consequently, the Legislature may employ any reasonable method to accomplish its purpose without using the express language found in said section.
In reaching this conclusion we took into account that the North Dakota Legislature revised the criminal code and by adopting Title 12.1 enacted a criminal code replacing many criminal provisions which were repealed. The provisions that were repealed were in one form or another incorporated in Title 12.1. The offense of obtaining property or money by false pretenses was carried over and is now found in Chapter 12.1-23 under the heading "Theft and Related Offenses."
We are convinced that the Legislature in enacting subsection 3 to § 12.1-01-01 clearly intended to provide that those persons having violated a penal law committed prior to the effective date of Title 12.1 would be tried and sentenced under the law in effect at the time and in those instances the laws violated would not be considered repealed until the legal process against the defendant had been completed. Under subdivisions (a) and (b) of subsection (3) the Legislature also provided that the court with the consent of the defendant could permit a defense or mitigation of the offense if allowed under the provisions of Title 12.1 as well as impose sentences under the provisions of Title 12.1 with consent of the defendant. These additional provisions convincingly illustrate that the language found in subsection (2) of § 12.1-01-01 was designed to continue the penalties of imprisonment for the violation of a penal law to remain in full force and effect until the processes against the defendant have been completed, including the imposition of sentence, if any.
The application for writ of habeas corpus is denied.
ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.